## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **TAMMY LYNN PECK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No.  16-1142-JAR** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Tammy Lynn Peck's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act,[1] and supplemental security income under Title XVI of the Social Security Act.[2]  Because the Court finds that Defendant Commissioner's findings are supported by substantial evidence, the Court affirms Defendant's decision.

### I.    Procedural History

On January 22, 2013,  Plaintiff protectively applied for disability insurance benefits and supplemental security income, alleging an onset date of November 1, 2011.  Plaintiff was last insured for disability benefits on September 30, 2016.  Plaintiff's applications were denied initially and upon reconsideration; after a hearing, the ALJ issued a decision finding that Plaintiff was not disabled and the Appeals Council denied plaintiff's request for review.  Plaintiff then sought judicial review.

---

[1] 42 U.S.C. §§ 401–433.

[2] 42 U.S.C. §§ 1381-1383c.

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[3]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[5]

## III.      Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[7]  The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8]  If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[3]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[4]*Id.* (quoting *Castellano*, 26 F.3d at 1028).

[5]*Id.*

[6]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[7]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

way, the evaluation ends.[9]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff engaged in substantial gainful activity from the alleged onset date of November 1, 2011 until October 31, 2012, but that there has been a continuous twelve month period during which Plaintiff did not engage in substantial gainful activity.[10] Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: depression, ischemic heart disease, diabetes mellitus, hypertension and fibromyalgia.

But Plaintiff challenges the ALJ's determination of Plaintiff's mental Residual Functional Capacity ("RFC"), which Plaintiff argues is erroneous in that the ALJ improperly weighed the opinion of examining therapist Dr. Melvin Berg, improperly gave no weight to the opinion of Amanda Denton, the nurse practitioner who treated Plaintiff, and improperly gave significant weight to the opinion of the non-examining state agency psychologists.

## IV.    Discussion

The ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b),

> except she can occasionally lift twenty pounds, frequently lift or carry ten pounds, sit for up to six hours, stand or walk for approximately six hours in an eight hour day with normal breaks.  She can frequently climb ramps or stairs, occasionally climb ladders, ropes or scaffolds; can occasionally tolerate extreme heat.  She is able to understand, carry out and remember simple, routine and repetitive tasks; involving only simple, work-related decisions; with few, if any, work place changes.

At issue is the mental portion of the RFC, which states that Plaintiff can understand, carry out and remember simple, routine and repetitive tasks and engage in simple work-related

---

[9]*Id.*

[10]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

decision-making.  Plaintiff argues that the ALJ improperly gave no weight to the opinion of

APRN Amanda Denton, improperly gave weight to the opinions of state agency psychologists,

and improperly weighed the opinion of psychologist Dr. Melvin Berg who performed two

consultative examinations of Plaintiff.

The determination of the RFC is left to the Commissioner,[11] not the examining or

reviewing physicians.[12]  And, the Commissioner need not adopt all the limitations in any

opinion, even an opinion accorded substantial or significant weight.[13]  But the ALJ must explain

why he excludes limitations included in the opinion, so that this Court can meaningfully review

that decision.   Moreover, "[a]n ALJ must evaluate every medical opinion in the record, although

the weight given each opinion will vary according to the relationship between the disability

claimant and the medical professional."[14]  The opinions of treating providers are generally

accorded more weight than the opinions of non-treating providers.[15]  Furthermore, the opinions

of examining providers are generally accorded more weight than the opinions of non-examining

providers who merely review medical records.[16]

---

[11]SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

[12]*Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004).

[13]*Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)("there is no requirement in the regulations for a direct correspondence between [a residual functional capacity] finding and a specific medical opinion on the functional capacity in question.")).

[14]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004)(citing 20 C.F.R. § 404.1527(d)).

[15]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374184, at *5 (July 2, 1996)).

[16]*Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)(*citing Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir.1983("the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed by the government for the purpose of defending against a disability claim."))

4

On April 18, 2013, Dr. Melvin Berg, a psychologist, did a consultative psychological examination of Plaintiff, and opined that Plaintiff

> demonstrates some limitations in her ability to attend to and process simple information, as she proceeds with considerable hesitation. Performing simple tasks appears laborious for her, even though she does try to persist. Her ability to learn and retain new information is at least mildly limited....she speaks slowly and is inclined to get off track.... (and her) ability to manage her own funds is limited due to her slow pace, vulnerability to feeling overwhelmed and inclination to make errors.

Dr. Berg again examined Plaintiff on September 6, 2013, and rendered an opinion consistent with his opinion in April. Dr. Berg further noted that Plaintiff "is functioning within the borderline to low average range of intellectual ability, as reflected by her capacity for verbal expression and comprehension. She at times needed directions to be repeated, as she was slow to understand what was presented to her. Her thinking, however, was logical, coherent and reality based, although mildly loose." He found that she "can become confused on some very simple tasks." He further found, based on his examination and testing, that while she was able to solve all seven arithmetic problems, it was with "some hesitation," as well as confusion and multiple errors on some tests, such that she gave up at times. His testing further revealed that her "immediate memory for simple information was largely intact," and she was mostly "able to retain and execute simple instructions," but her delayed recall was limited, and her immediate memory for more complex information was low average. He opined that her GAF was 61.

Two state agency psychologists rendered opinions based on their review of the records, including Dr. Berg's examination. On April 24, 2013 Dr. Blum, opined that Plaintiff largely had no significant limitations, except moderate limitations in understanding and remembering detailed instructions, and a mild limitation in her ability to remember simple tasks. He further

opined that she does not have significant limitations in sustaining concentration, persistence or pace as there is no information that she has difficulty staying on task, although she does have difficulty following multi-step directions.  He also opined that Plaintiff has difficulties with problem solving and learning new information, and appears to function in the low average range of intelligence.

And on September 10, 2013, Dr. Bergmann-Harms, Ph.D rendered an opinion consistent with Dr. Blum and further opined that Plaintiff was "slow learning simple information," and "was very low at recalling more complex information.  She would be mildly limited in her ability to remember simple tasks but can understand simple, familiar tasks."      Notably, at the time Drs. Blum and Bergmann-Harris reviewed the records, their review was largely limited to Dr. Berg's examination, for Plaintiff had never previously undergone psychological evaluation or treatment, other than receiving prescriptions and medicine samples, apparently from a primary care provider.  Dr. Kristina Moreland, a primary care physician had examined Plaintiff for the first time in June 2013 and noted that Plaintiff had "low complexity decision making."  When Dr. Moreland saw Plaintiff again, in July 2013, Dr. Moreland noted Plaintiff's "flat affect, psychomotor retardation."

Plaintiff commenced a regular course of outpatient therapy at the Southeast Kansas Mental Health Center ("SEKMHC") on November 25, 2013, two to six months after Drs. Berg, Blum and Bergman-Harms rendered their opinions.  From November 2013 to August 2014, Plaintiff was evaluated and treated at the SEKMHC by licensed professional counselors Nickole Masoner and Anne Marie Strobel, licensed master's level psychologist Jarrod Reichert, as well as Amanda Denton, APRN (advanced practice registered nurse).  While APRNs are not

acceptable medical sources,[17] and licensed professional counselors may not be acceptable medical sources either,[18] nonetheless,  "[o]pinions from other medical sources are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence of record."[19]

On November 21, 2013, Ms. Masoner did a screening assessment of Plaintiff, noting that Plaintiff had run out of medication and was feeling more depressed.  Ms. Masoner scored a GAF of 45, noting that Plaintiff had homicidal and suicidal ideation, was a threat to herself, had racing thoughts and congruent affect.  Ms. Masoner developed a comprehensive treatment plan of medication and therapy.  This treatment commenced on November 25, when Plaintiff was examined by APRN Denton, who noted that Plaintiff had a "[s]omewhat tangential thought process," as well as fair attention and concentration, passive suicidal thoughts, some recent and remote memory impairment, and a low level of intelligence.  The next day, Ms. Strobel examined Plaintiff and scored a GAF of 50, noting that Plaintiff had fair insight, flat affect and no suicidal ideation.

From November 2013 to May 2014, Plaintiff saw APRN Denton on at least five occasions.  Plaintiff saw Ms. Strobel on nine occasions, from November 2013 to July 2014. Plaintiff saw Ms. Masoner on three occasions from November 2013 to January 2014.  And,

---

[17]*See* 20 C.F.R. §§404.1502, 404.1513.

[18]*See Holcomb v. Astrue*, 389 F. App'x 757, 759–60 f.n. 2 (10th Cir. 2010)(" Licensed clinical social workers are considered "other sources," as defined in 20 C.F.R. § 404.1513(d) and 416.913(d), who may provide evidence useful in determining impairment severity and the functional effect of an impairment. SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). For purposes of this order and judgment, we will assume, without deciding, that licensed professional counselors can also be considered "other sources," as defined in 20 C.F.R. § 404.1513(d) and 416.913(d).").

[19] SSR 06-03p, 2006 WL 2329939, *3 (Soc. Sec. Admin Aug. 9, 2006)

Plaintiff saw Mr. Reichert on one occasion, in August 2014.

At the time Plaintiff commenced treatment with these various professionals at the SEKMHC in November 2013, she had run out of medication, she had suicidal ideation, a GAF of 45 and was considered a threat to herself. Over the course of the next nine months, these professionals prescribed several medications to address Plaintiff's depression and psychological problems, at times changing the dosages or medications to better address Plaintiff's symptoms. And, over the course of these nine months, Plaintiff's condition largely improved.

On December 5, 2013, APRN Denton rendered an opinion in a Medical Source Statement-Mental form. This was about two weeks after Plaintiff had commenced treatment at the SEKMHC, and after both Ms. Strobel and Ms. Denton had done lengthy evaluations of Plaintiff. Ms. Denton opined that Plaintiff moderate limitations in her ability to understand and remember very short and simple instructions, but no significant limitations in her ability to carry out very short and simple instructions. Ms. Denton further opined that Plaintiff had extreme limitations in the ability to maintain attention and concentration for extended periods, and extreme limitations in the ability to understand, remember or carry out detailed instructions. Ms. Denton's narrative explained that Plaintiff cannot read, has low comprehension, has difficulty communicating with others, makes up words to communicate and is "unable to work." Further, in her December 5 treatment note, Ms. Denton noted that Plaintiff cannot read or write, has a learning disability in reading, writing and comprehension, has fair recent and remote memory, but poor attention and concentration, "[n]eeds to write things down to remember...Anxiety causes loss of attention."

After Ms. Denton's opinion in December 2013, Plaintiff's condition periodically

improved and periodically worsened, but overall improved when she was taking prescribed medications.  After being treated by Ms. Denton on December 5, Plaintiff was seen by Ms. Denton again on December 31, for an "emergency appointment."  Despite Plaintiff taking two prescribed medications, Plaintiff presented with depression, insomnia, impaired recent and remote memory, fair attention and concentration, but no suicidal ideation.  Ms. Denton changed Plaintiff to a different medication.

In January 2014, Plaintiff's condition did not improve.  Ms. Masoner saw Plaintiff twice in January.   On January 14, Ms. Masoner scored a GAF of 55, noting that Plaintiff had suicidal ideation.  On January 28, Masoner scored a GAF of 45.

In February 2014, Plaintiff's condition did not markedly improve.  Plaintiff was seen by Ms. Denton and Ms. Strobel.  On February 6, despite taking two medications for depression and insomnia, Ms. Denton noted that Plaintiff's had no suicidal ideation, but her recent and remote memory were impaired and her attention and concentration fair.  On February 27, Ms. Strobel scored a GAF of 44, noting that Plaintiff had suicidal ideation, blunt affect, and that Plaintiff reported that she was too depressed to get out of bed most days.

Again in March 2014, Plaintiff's condition did not markedly improve.  Ms. Strobel saw Plaintiff twice in March 2014.  On March 13, Ms. Strobel scored her GAF at 50, noting that Plaintiff had no suicidal ideation, but had blunt affect and fair insight.  Two weeks later, on March 27, Ms. Strobel again scored Plaintiff's GAF at 50, noting that Plaintiff had suicidal ideation and blunt affect.

In April 2014, Plaintiff was seen only once, on April 10, by Ms. Strobel.  Plaintiff had been out of medication for two days, and presented in an "anxious, angry and overwhelmed

state." Ms. Strobel noted that Plaintiff had blunted affect, fair insight, scattered thinking and some suicidal ideation.   Ms. Strobel scored her at a GAF of 50.

In May 2014, Plaintiff was seen by Ms. Denton and Ms. Strobel.  On May 1, Ms. Denton noted that after taking medication for two weeks, Plaintiff was reporting improved symptoms. Ms. Denton further noted that Plaintiff had fair recent and remote memory, fair attention and concentration and no suicidal or homicidal ideation.  Ms. Strobel saw Plaintiff on May 22, scoring her GAF at 50, and noting that  Plaintiff presented with a  blunted affect, fair insight, scattered thinking, but no homicidal or suicidal ideation.   Strobel further noted that Plaintiff was reporting that she was feeling better, so long as she takes her medication.

Plaintiff's condition improved in June 2014.  At the June 5 visit, Ms. Strobel noted that Plaintiff's prognosis was fair and that Plaintiff had moderate symptoms.  At both the June 5 and June 17 visits, Ms. Strobel scored an improved GAF of 55, and noted that Plaintiff blunt affect, scattered thinking and no suicidal ideation.

Ms. Denton saw Plaintiff in July 2014, noting that Plaintiff does well as long as she takes the medication.  Ms. Denton further noted that Plaintiff had no suicidal ideation, had congruent affect, some difficulty with short-term memory, but good remote memory, fair attention and concentration.   Finally, on August 7, 2014, Mr. Reichert, T-LMLP saw Plaintiff, scored her GAF at 55, and noted that Plaintiff had flat affect, poor cognition and attention, rambling speech, and "some thoughts of dying, but no suicidal ideation/plans."

This longitudinal history demonstrates that although Plaintiff had suicidal ideation and lower GAF scores when her therapy with the SEKMHC commenced in November 2013, over time, and particularly after her medications were changed and she was taking the medications

consistently, her condition improved.  She no longer had suicidal ideation, and her GAF scores were persistently in the range of 50 to 55.

To be sure the ALJ gave greater weight to the opinions of Drs. Berg, Blum and Bergman-Harms, who evaluated or reviewed Plaintiff's records before her course of treatment with the SEKMHC.  But this Court cannot find the ALJ erred in according greater weight to their opinions than the opinion of APRN Denton.  First, the ALJ correctly noted that an APRN is not an acceptable medical source whose opinion is entitled to the weight of other acceptable medical sources under the regulations.  Further, the ALJ is correct that Ms. Denton's opinion that Plaintiff is unable to work intrudes on the ALJ's province of determining disability and need not be given any weight.[20]  Moreover, the ALJ did not ignore Ms. Denton's opinions, nor her treatment records.   The ALJ's opinion discusses a number of findings of Ms. Denton and the therapists during their course of treatment of Plaintiff.

Furthermore, the Court disagrees with Plaintiff that the opinions of Drs. Berg, Blue and Bergman-Harms were "stale."  Although the treatment records show that Plaintiff's condition worsened in the latter months of 2013, by mid 2014, her condition had improved, with medication and therapy and her condition was similar to that recorded by Dr. Berg, based on his evaluations in April and September 2013.

This Court declines, as it must, to reweigh the evidence.[21]  But, the Court finds that there

---

[20] *See* SSR 96–5p, 1996 WL 374183, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1527(e)(1)- (2), 416.927(e)(1)- (2); *see also Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1029 (10th Cir. 1994) (noting that an opinion by a physician that a claimant is totally disabled is not dispositive because the final responsibility for determining the ultimate issue of disability is reserved to the Commissioner).

[21] *See White v. Massanari*, 271 F.3d at 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

is substantial evidence supporting the ALJ's RFC.  For the ALJ's RFC recognizes that Plaintiff is limited to simple work that would involve little interaction with others.  This RFC is supported not only by the opinions of Drs. Berg, Blum and Bergman-Harms.  It is consistent with the evaluation of Plaintiff's treating providers, therapists Masoner, Strobel and Reichert that Plaintiff had fair attention and concentration, but some impairment of recent and remote memory, scattered or tangential thinking, and low average intelligence.  While APRN Denton opined that Plaintiff's attention and concentration were poor and that she had extreme limitations in attention and concentration, that opinion is not supported by Ms. Denton's contemporaneous treatment records, nor the treatment records of the therapists at Southeast Kansas Mental Health Center, who consistently characterized her limitations as moderate or fair, not poor or extreme.

The ALJ also appropriately found that even the limitations observed by Dr. Berg in 2013 had to be "tempered" to account for the degree to which Plaintiff's depression was situational; Plaintiff repeatedly spoke about her depression since the death of her husband in January 2013, just a few months before she was first evaluated by Dr. Berg, and some ten months before she began treatment at the SEKMHC.  The ALJ appropriately found that the longitudinal treatment record showed that Plaintiff improved with medication, and improved over time.  By mid-2014, her treatment providers were noting her improvement.

Further, the ALJ explained that he gave little weight to GAF scores compared to the "bulk of other, more convincing evidence."  But this was not error, for "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy,"[22] and failure to expressly recite or reconcile a low GAF score does not constitute error

---

[22]*Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (internal citations and quotations omitted).

or contravene substantial evidence supporting the ALJ's decision.[23]   In any event, the GAF scores here support the ALJ's determination that over time, Plaintiff improved with medication and as her husband's death became more distant in time.  While Plaintiff presented with moderate GAF scores of 60[24] when evaluated by Dr. Berg, the evidence was that she was taking medication at that time, apparently prescribed by one of her primary care physicians.  In contrast, when Plaintiff first presented to the SEKSMHC, she had gone without medication, her symptoms were more acute and her GAF scores were as low as 45.  Over the next few months, however, her GAF scores rose to 50 and then 55, back into moderate range,[25] while she was medicated and receiving regular therapy.  She had one setback in April 2014, but that was when she had gone unmedicated for two weeks.

Finally, the ALJ appropriately relied upon other non-medical evidence in assessing the RFC.  He found that Plaintiff had done some childcare, housekeeping, and took care of chickens.  That activity, coupled with the improvement of her mental health demonstrated, as the ALJ found, no reason to believe that she is not able to perform some simple work.

## V.       Conclusion

Because the Court finds that Defendant Commissioner's findings are  supported by substantial evidence, the Court affirms Defendant's decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision

---

[23]*Id.*

[24]*See Holcomb v. Astrue*, 389 F. App'x 757, 759–60 f.n. 3 (10th Cir. 2010) (a GAF of 51–60 indicates moderate symptoms, citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.2000) at 34.).

[25]*Id.*

denying Plaintiff disability benefits is **AFFIRMED.**

**IT IS SO ORDERED.**

Dated: <u>December 29, 2016</u>

         S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

14